IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRIAN DANIELS,
#K91046,

        Plaintiff,

v.

TYSON BROWN,
JOHN BALDWIN, and
FRANK LAWRENCE,

        Defendants.

Case No. 19-cv-01341-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court the Motion for Summary Judgment filed by Defendants Brown, Lawrence, and Baldwin. Defendants argue that Plaintiff Darrian Daniels failed to exhaust his administrative remedies prior to filing suit. (Docs. 48, 49). Daniels filed a Response in opposition to the Motion. (Doc. 53). On November 4, 2020, the Court held an evidentiary hearing. Defense Counsel Davis appeared on behalf of Defendants, and Plaintiff Daniels did not attend.

### BACKGROUND

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 alleging that from September 5, 2019, through November 2019, he was served contaminated food and denied meals. (Doc. 1). Following preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, Daniels is proceeding with the following claims:

> **Count 1:** Eight Amendment claim of cruel and unusual punishment against Brown, Baldwin, and Lawrence for serving Daniels contaminated food and denying him food.

**Count 2:** First Amendment claim against Brown for retaliating against Daniels for filing a lawsuit by serving him contaminated food and denying him food.

In the Motion for Summary Judgment, Defendants argue that Daniels has only filed one grievance relating to the issues alleged in the Complaint. In grievance #377-10-19, Daniels grieves that since August 2018, he has been refused food trays while in segregation, served a food tray with feces in it, and threatened on a daily basis by Officer Brown. (Doc. 49, p. 2). Daniels filed the grievance October 30, 2019, and marked it as an emergency. (Doc. 49-1, p. 2-3). It was determined not to be an emergency by the Chief Administrative Officer, and Daniels was instructed to submit the grievance according to normal procedures. Rather than resubmitting the grievance in accordance with the standard grievance process, Daniels sent the grievance directly to the Administrative Review Board, along with a letter addressed to the "Director." (*Id.* at p. 4-5). The Administrative Review Board determined that the grievance was not submitted in the timeframe outlined in Department Rule 504. (*Id.* at p. 1). The Illinois Administrative Code requires that "a grievance must be filed with the counselor or grievance officer. . . within 60 days after the discovery of the incident, occurrence or problem that gives rise to the grievance." (Doc. 49, p. 7) (quoting ILL. ADMIN. CODE § 504.810). In the grievance, Daniels states that the incidents with his food began in August 2018, but he did not file his grievance until October 30, 2019. Defendants argue that because Daniels failed to fully comply with the grievance procedures and to submit his grievance within the required timeframe, the October 30, 2019 grievance was not fully exhausted.

Defendants further argue that the October 30, 2019 grievance does not meet the provisions of the Illinois Administrative Code requiring a grievance to "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." (Doc. 49, p. 8) (quoting ILL. ADMIN. CODE § 504.810(c)). They state that Daniels cannot rely on this grievance to

claim he exhausted his remedies because the grievance does not attribute the actions of Defendants with his claims of food contamination and denial of meals.

Daniels filed a Response to the Motion for Summary Judgment. He argues that when he received the October 30, 2019 grievance back from the warden, after it was determined not to be an emergency, he filed it with the grievance officer. (Doc. 53, p. 4). The grievance officer returned the grievance back to him and instructed him to send it to the Administrative Review Board. He sent it to the Administrative Review Board but did not receive an answer. (*Id.* at p. 5). Daniels also claims he attempted to exhaust the prison's administrative remedies by filing an emergency grievance on September 5, 2019, and an emergency grievance on November 3, 2019. (*Id.* at pp. 2, 12-15). He claims he sent these two grievances to the warden and the Administrative Review Board but did not receive any responses. Because these grievances were ignored, he argues his administrative remedies were exhausted.

**LEGAL STANDARDS**

**Summary Judgment**

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (citing FED. R. CIV. P. 56(c)). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a properly supported motion for summary judgment has been filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a

summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

*Exhaustion Requirements*

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). Pursuant to the PLRA, prisoners are required to exhaust administrative remedies prior to filing lawsuits in federal court. *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997(e) from litigation." *Id.* at 1024.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly

> exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

As an inmate confined within the Illinois Department of Corrections, Daniels was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief

Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

## ANALYSIS

The Court must first address Daniels's refusal to participate in the hearing. With plenty of notice to the parties, on September 24, 2020, the Court scheduled a hearing on the Motion for Summary Judgment via video conference for November 4, 2020. (Doc. 55). Two weeks prior to the hearing, Daniels notified the Court that he has severe hearing loss and requested special accommodations so that he could participate at the hearing. (Doc. 61). At the Court's direction, Defendants contacted Menard to inquire about the availability of an assistive listening device. (Doc. 63). Their inquiry revealed that at a previous hearing the only assistive listening device available to Daniels, an amplified telephone, did not sufficiently help Daniels to hear. The Court then arranged for Daniels to have access to a real time transcription of the proceedings. (Doc. 64). On November 4, 2020, the Court waited for Daniels to appear through video conference. After contacting Menard, the Court was informed that following multiple attempts by staff to bring Daniels to the videoconferencing room, Daniels was refusing to leave his cell and participate in the hearing.

Daniels has litigated other cases in this district as a *pro se* plaintiff and has participated in court hearings before, including in this case.[1] (*See* Doc. 32). Therefore, he is aware that a hearing is his opportunity to present arguments and evidence before the Court and demonstrate his credibility. Daniels was provided with sufficient notice of the hearing and special accommodations by this Court so he could fully participate, yet he chose not to appear. Accordingly, Daniels has missed his opportunity to refute the evidence presented by Defendants, and the Court will rule on the Motion for Summary Judgment based on the briefings and Defendants' arguments made at the hearing.

---

[1] *See Daniels v. Mitchell,* No. 13-cv-00609-SCW (S.D. Ill. 2013); *Daniels v. Mezo,* No. 14-cv-01058-SMY-RJD (S.D. Ill. 2014); *Daniels v. Menard Corr. Ctr.,* No. 19-cv-00394-RJD (S.D. Ill. 2019); *Daniels v. Lawrence,* No. 20-cv-00096-DWD (S.D. Ill. 2020).

First, the Court finds that the emergency grievances dated September 5, 2019, and November 3, 2019, were not fully exhausted. At the hearing, Defendants argued that there is no evidence of these grievances being properly submitted for review by the warden. (*See* Docs. 27-3, 49-2, 49-3). Defendants stated that when a grievance is filed at Menard, they are logged in the Cumulative Counseling Summary by a counselor. As these grievances are not recorded in the Cumulative Counseling Summary, then it can be inferred they were not properly filed. Defendants pointed out that in Daniels's Cumulative Counseling Summary a counselor documented the receipt of the October 30, 2019, emergency grievance, as well as others, demonstrating that the two grievances presented by Daniels were never actually submitted for review.

In his Response, Daniels argues that the Cumulative Counseling Summary (Doc. 49-2) and ARB IGRV Inmate History (Doc. 49-3) submitted by Defendants have been falsified because the various grievance and counseling records are inconsistent. (Doc. 53, p. 5-6). To demonstrate this argument, he submitted a grievance log filed as an exhibit by the defendants in another civil case showing two grievances he filed on May 31, 2018, and one on August 8, 2018. (Doc. 53, p. 21). He states that his ARB IGRV Inmate History submitted by Defendants in this case does not record these three grievances but includes a record of four other entirely different grievances from 2018, none of which are in the exhibit he has presented. (Doc. 49-3, p. 1).

These inconsistencies, however, do not show that the Cumulative Counseling Summary submitted by Defendants in this case is false. The three grievances Daniels's references from the exhibit are in fact recorded in his Cumulative Counseling Summary filed by Defendants (Doc. 49-2, pp. 3, 4), and their absence from the ARB IGRV Inmate History only demonstrates that they were either not sent to the ARB for appeal, or viewing the evidence in light most favorable to Daniels, were not logged by the ARB. Daniels has not submitted any admissible evidence to support this claim that the records maintained by Menard have been falsified and that he properly

submitted the emergency grievances dated September 5, 2019, and November 3, 2019, to the warden at Menard. Rather, the Court finds that the evidence presented demonstrates that Daniels knew how to properly file an emergency grievance and did so twice during the fall of 2019. He successfully submitted emergency grievances dated October 30, 2019, and November 22, 2019, demonstrating his ability to access the procedural mechanisms at Menard. (*See* Doc. 49-2, p. 1). There is no evidence that Daniels was prevented from filing grievances. Therefore, he has not shown that the grievance process was unavailable to him as to the emergency grievances dated September 5, 2019, and November 3, 2019.

The Court further finds that the emergency grievance dated October 30, 2019, was also not exhausted. Contrary to the determination by the ARB and Defendants' arguments, the grievance was timely filed and adequately put Defendants on notice of Daniels's complaints. *Pyles v. Nwaobasi,* 829 F. 3d 860, 867 (7th Cir. 2016) ("The purpose of the exhaustion requirement is to ensure that prisons have a fair opportunity to correct their own errors through the grievance process.") (citations omitted). Daniels stated in the grievance that "since 2018" he had been threatened by Brown, refused of food trays, and served food trays with feces. (Doc. 49-1, p. 3). The ARB failed to recognize that Daniels complaints were not isolated incidents but ongoing in nature. *See Wilder v. Sutton,* 310 F. App'x 10 (7th Cir. 2009). Because Daniels claimed he was still being denied food and served contaminated meals at the time the grievance was filed, "he was within sixty days of an incident underlying his complaint," *Id.,* and his grievance was timely. Daniels also sufficiently alerted "the prison to the nature of the wrong for which redress is sought[.]" *Westerfer v. Snyder,* 422 F.3d 570, 580 (7th Cir. 2005) (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002)). As mentioned, Daniels grieved he was being threatened by Brown, receiving contaminated food, and denied meal trays. He also stated that the warden and IDOC director "have a history of being deliberately indifferent to his unconstitutional treatment." (Doc.

49-1, p. 3). This grievance provided notice of the issues alleged in Daniels's Complaint, and afforded Menard an opportunity to correct the problems prior to the commencement of litigation. *See Love v. Myers,* 2020 WL 4747714, at *4 (S.D. Ill. 2020) ("Exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of the problem and give them an opportunity to fix it.") (citing *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013)).

That being said, the October 30, 2019 emergency grievance was not filed in accordance with the procedures established by the Illinois Administrative Code, and thus, the grievance was not fully exhausted. Defendants argued at the hearing that after the CAO determined that the grievance was not an emergency, and rather than resubmitting the grievance in the normal manner, Daniels appealed the grievance to the ARB, failing to comply with proper grievance procedure. (Doc. 49, p. 7). In his Response, Daniels confirms that he received the grievance back with the determination from the CAO. (Doc. 53, p. 4). He argues, however, that he then submitted the grievance to a grievance officer, who instructed him to send the grievance directly to the ARB. He sent the grievance to the ARB, and then he did not receive response. (*Id.* at p. 5).

Daniels's claim that he was misinformed about the proper procedures by a grievance officer is not supported by the record, and it is undisputed that he received the grievance back from the CAO with instructions to "resubmit the grievance in a normal manner." (Doc. 49-1, p. 2). Additionally, there is nothing in the Illinois Administrative Code that allows for an appeal to the ARB of a determination by the CAO that the grievance is not an emergency, and Daniels does not claim that he did not know the grievance process. *See Smith v. Asselmeier,* 762 F. App'x 342, 344 (7th Cir. 2019). Whether Daniels received a response from the ARB is immaterial, as the lack of response did not prevent him from completing the administrative process by resubmitting the

grievance with his counselor at Menard, as is required by the Illinois Administrative Code. Accordingly, because Daniels did not refile the October 30, 2019 emergency grievance through the normal process, he failed to exhaust the administrative remedies that were available to him.

Based on the record, the Court concludes that Daniels did not fully exhaust his emergency grievances in accordance with IDOC procedures and was not prevented from doing so by actions taken by Defendants. As he has not exhausted his claims in this action, the Court grants the Motion for Summary Judgment and finds that dismissal of all claims against all Defendants is appropriate at this time.

## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Doc. 48) is **GRANTED** as to Defendants Brown, Lawrence, and Baldwin. The Clerk is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   November 6, 2020**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**
