IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRIAN DANIELS, #K91046, <br><br>   Plaintiff, <br><br>v. <br><br>TYSON BROWN, JOHN BALDWIN, and FRANK LAWRENCE, <br><br>   Defendants. | Case No. 19-cv-01341-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Reconsideration and a Motion for Order filed by Plaintiff Darrian Daniels. (Docs. 71, 72). Defendants John Baldwin, Tyson Brown, and Frank Lawrence filed a response. (Doc. 75). Daniels filed a reply brief. (Doc. 76). The Court held a hearing on the motions on February 25, 2021, and heard testimony from Plaintiff Daniels and Defendant Brown, as well as Edward Roberson, Marcellus Ottensmeier, and Caleb Zang. For the following reasons, the motions are denied.

### BACKGROUND

Plaintiff Darrian Daniels, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center ("Menard"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 alleging that from September 5, 2019, through November 2019, he was served contaminated food and denied meals. (Doc. 1). Following preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, Daniels is proceeding with the following claims:

  **Count 1:**  Eight Amendment claim of cruel and unusual punishment against

Page 1 of 7

> Brown, Baldwin, and Lawrence for serving Daniels contaminated food and denying him food.

**Count 2:** First Amendment claim against Brown for retaliating against Daniels for filing a lawsuit by serving him contaminated food and denying him food.

Defendants filed a Motion for Summary Judgment claiming that Daniels did not exhaust his administrative remedies prior to initiating this lawsuit. On November 4, 2020, the Court held an evidentiary hearing on the Motion for Summary Judgment ("*Pavey* hearing"). *See Pavey v. Conley,* 544 F. 3d 739, 742 (7th Cir. 2008); (Docs. 48, 65). Daniels did not attend the hearing. After contacting Menard, the Court was informed that following multiple attempts by staff to bring Daniels to the videoconferencing room, Daniels was refusing to leave his cell and participate in the hearing. The Court then allowed Defendants to present their arguments and ruled on the Motion for Summary Judgment based on the briefings and the arguments presented. (Doc. 66). The Motion for Summary Judgment was granted and judgment entered in favor of Defendants. (Docs. 66, 67).

After the case was closed, Daniels filed with the Court two notices, a Motion for Reconsideration, and a Motion for Order claiming that he was prevented from attending the *Pavey* hearing. (Docs. 68, 69, 71, 72). Daniels alleges that on November 4, 2020, Defendant Correctional Officer Brown, who was working as the gallery officer in Gallery 2 in North 2 segregation where Daniels is housed, came to Daniels's cell and kicked and banged on the door. Brown held up a note that read "you aint get[t]ing treatment for your hearing loss as long as you are in Menard and fuck your court writ pass, you['re] burnt." (Doc. 69, p. 1). Daniels claims that Brown was the only staff member who came to his cell that morning to escort him to the *Pavey* hearing. He argues Defendants prevented him from attending the hearing and that he did not refuse to participate. Because of Brown, Daniels claims he was unable to demonstrate his credibility and present his arguments and evidence showing that the administrative remedies were unavailable to him at

Page 2 of 7

Menard. Daniels asks the Court to reconsider the order granting summary judgment and the judgment order, reopen the case, and set a new evidentiary hearing. In support of his argument, Daniels asks the Court to order Defendants to produce the camera video footage from the morning of November 4, 2020.

In response, Defendants affirm that Correctional Officer Brown was the gallery officer for Gallery 2 in North 2 on November 4, 2020. (Doc. 75, p. 2). However, according to Brown, when he arrived at Daniels's cell to escort Daniels to the videoconferencing room, Daniels began yelling that he did not want to be escorted by Brown. (Doc. 75-2, 1). Brown claims that he did not bang on the cell or show Daniels a threatening note. (*Id.* at p. 2). When Daniels refused to be escorted by Brown, Brown asserts that he then asked the gallery escort officer, Correctional Officer Ottensmeier, to escort Daniels to the hearing. (*Id.* at p. 1). Daniels refused to also be escorted by Officer Ottensmeier and stated he was not going to take his call pass for the hearing. In accordance with procedure, the lieutenant and videoconference officer were informed. Defendants argue that Daniels was not restricted from attending and participating in the hearing and chose not to be escorted and participate. They also state that there is no video footage in existence for Daniels's cell the morning of November 4, 2020.

Although prison procedures require that a correctional officer fill out an incident report when an inmate refuses to participate in a court hearing, Defendant Brown states that he did not write one for Daniels's refusal to participate in the *Pavey* hearing. (Doc. 75-1, p. 2). Brown claims that in the afternoon of November 4, 2020, during a routine gallery tour, an inmate struck him in the mouth and eyes with a liquid substance that smelled and looked like urine. As a result of this incident, Brown had to write an incident report regarding what occurred, submit to blood labs for occupational exposure, and complete a workman's compensation packet. Because of this event and the procedural process that followed, Brown forgot to write an incident report regarding

Daniels's refusal to be escorted to his hearing. (*Id.*).

## ANALYSIS

The Federal Rules of Civil Procedure do not specifically authorize the filing of motions to reconsider. Such motions are filed routinely, however, and they are construed either as Rule 59(e) motions to alter/amend or Rule 60(b) motions for relief from judgment/order. The Court looks to the substance of the motion to determine whether the motion should be analyzed under Rule 59(e) or Rule 60(b). *See Obriecht v. Raemisch,* 517 F. 3d 489, 493 (7th Cir. 2008). Here, Daniels's argument is that the Court should reconsider the Order granting summary judgment because Defendant Brown denied him the opportunity to present his arguments and demonstrate his creditability at the *Pavey* hearing. (*See* Doc. 71, p. 10). The Seventh Circuit has stated that "[w]here the moving party has been prevented from presenting the merits of his case by the conduct of which he complains, Rule 60(b) relief is most appropriate." *Ervin v. Wilkinson,* 701 F. 2d 59, 61 (7th Cir. 1983). Thus, the Court will assess the Motion under Rule 60(b).

Pursuant to Rule 60(b)(3), "a court may set aside a judgment if a party engaged in 'fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.'" *Wickens v. Shell Oil Co.,* 620 F. 3d 747, 758 (7th Cir. 2010) (quoting FED. R. CIV. P. 60(b)(3)). A party seeking relief under this Rule must prove by clear and convincing evidence that "the party was prevented from fully and fairly presenting its case" as a result of the adverse party's conduct. *Fields v. City of Chi.*, 981 F. 3d 534, 558 (7th Cir. 2020). *See also Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983). "It is well-established that Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances." *Wickens,* 620 F. 3d at 759 (citations omitted). *See also United States v. 8136 S. Dobson St., Chi. Ill.,* 125 F.3d 1076, 1082 (7th Cir. 1997).

At the hearing, Daniels repeated his alleges as stated in his filings with the Court. He

testified that on the morning of November 4, 2020, Defendant Correctional Officer Brown came to his cell, banged on the door and window, and held up a threatening note. He stated that Brown did not offer to escort him to the videoconferencing room. Daniels further testified that he is not familiar with Correctional Officer Ottensmeier and that no other staff member, other than Brown, came to his cell prior to the *Pavey* hearing.

In support of his allegations, Daniels stated that there are cameras outside his cell and argued that the camera footage will support his claims and disprove Defendant Brown's testimony. Daniels pointed out that it is convenient for Defendants that there is not an incident report or camera footage documenting the event.

Daniels also called fellow inmate, Edward Roberson, as a witness. Roberson was housed in a cell two cells down from Daniels in segregation on the same side of the gallery on the morning of November 4, 2020. Roberson testified that on the date of the hearing he was lying down in his cell when he heard Brown talking loudly and banging. Roberson stated he then went to the cell door. He heard Brown yelling that Daniels was not going to the court writ, and he saw Brown holding up a piece of paper in a taunting manner. Roberson stated that after this interaction, Brown walked away from the cell and that he did not see anyone else approach Daniels's cell.

Defendant Brown told a different story. Brown testified that when he went to Daniels's cell to escort Daniels to the videoconferencing room, Daniels became belligerent and refused to go with him. Brown asked Daniels if he would go to the videoconferencing room if escorted by another officer, and Daniels answered yes. Brown then went and asked Correctional Officer Ottensmeier to assist with transporting Daniels and when they returned to the cell, Daniels said he was not going anywhere. Brown testified that the videoconference officer and the lieutenant were then informed of the events. Brown's testimony was corroborated by the testimony of Correctional Officer Ottensmeier. Ottensmeier testified that he was working as an escort officer for Galleries 2

and 4 on November 4, 2020, and in North 2 property when Brown came and informed him that Daniels was refusing to leave his cell for a court pass. Brown asked Ottensmeier if he would help escort Daniels from his cell. Ottensmeier testified he went to the cell to see if Daniels would come with him, rather than Brown, and Daniels again refused.

Based on the testimony and the evidence before the Court, Daniels has not demonstrated by clear and convincing evidence that Defendant Brown prevented him from attending the *Pavey* hearing. The Court does not find Daniels's version of events credible or supported by any evidence. Given the layout of the cells and that the cells in segregation have solid doors with only a window at eye level, Daniels' witness, Roberson, could not have seen what he claims to have witnessed on the morning of November 4, 2020. While Roberson testified that he heard Brown yell at Daniels that Daniels was not going to the court writ, Roberson also stated that he was not sure if Daniels spoke to Brown because speaking through the steal door is muffled, giving no context to the comment alleged to have been made by Brown. Roberson's statements that Brown spoke loudly and yelled at Daniels also conflicts with Daniels's own testimony that he did not have any conversations with correctional officers prior to the *Pavey* hearing. At the hearing, Daniels asserted twice that he does not have conversations through the cell door with staff because he is hard of hearing and denied having a conversation with the officers that day. He stated that prison staff communicate with him by holding up pieces of paper. At no point has Daniels asserted that Brown yelled or attempted to speak to him when Brown came to the cell. (*See* Doc. 68, p. 3; Doc. 69, p. 1, Doc. 71, p. 6, Doc. 72, p. 2).

As for whether Brown returned to the cell with Correctional Officer Ottensmeier, Roberson stated that he did not see anyone else approach the cell after Brown initially left the cell. However, he also testified that he was unsure of how long he stood at his cell door looking through the window and could not estimate a timeframe.

Although Daniels argues that camera footage would prove his allegations, unfortunately, such evidence does not exist. The Court inquired into the availability of any video relevant to this particular incident and is satisfied by Lieutenant Zang's affidavit and testimony that any relevant video is no longer available. (*See* Doc. 75-4).

Other than his own accusations, Daniels has not presented any evidence showing that Brown's actions prevented him from fully and fairly presenting his case, and thus, he has not met the clear and convincing standard required to set aside the judgment. Accordingly, the Motion for Recondensation is denied. As there is no video footage for the area around Daniels's cell on the morning of November 4, 2020, the Motion for Order is also denied.

## DISPOSITION

For the reasons stated above, the Motion for Reconsideration (Doc. 71) and the Motion for Order (Doc. 72) are **DENIED.** This case remains closed.

**IT IS SO ORDERED.**

**DATED:   April 27, 2021**

                                               *s/ Stephen P. McGlynn*
                                               **STEPHEN P. MCGLYNN**
                                               **United States District Judge**